**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2939
_____


MR. GREGORY L. RICKS,
                                        Appellant

v.

LIEUTENANT D. SHOVER; C/O KILE


_____


On Appeal from the District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-15-cv-03618)
District Judge:  Honorable Wendy Beetlestone
_____


Argued on February 8, 2018

Before: CHAGARES, SCIRICA, and RENDELL,
<u>Circuit Judges</u>

(Opinion filed: June 5, 2018)

James A. Kraehenbuehl     [Argued]
Boies Schiller Flexner
1401 New York Avenue, N.W.
Washington, DC 20005
            *Counsel for Appellant*

Josh Shapiro
        *Attorney General*
Claudia M. Tesoro          [Argued]
        *Senior Deputy Attorney General*
John G. Knorr, III
        *Chief Deputy Attorney General*
        *Chief, Appellate Litigation Section*
Office of Attorney General of Pennsylvania
21 South 12th Street
3rd Floor
Philadelphia, PA 19107
            *Counsel for Appellee*

———————

O P I N I O N

———————


**RENDELL**, <u>Circuit Judge</u>:

In this § 1983 case, Plaintiff-Appellant Gregory Ricks, a former inmate at Pennsylvania State Corrections facility SCI-Graterford, appeals the dismissal of his complaint

alleging sexual abuse and excessive force in violation of the Eighth Amendment. His two claims arise from an alleged incident where, during a routine morning pat-down, Corrections Officer Keil rubbed his erect penis against Ricks' buttocks through both men's clothing. When Ricks stepped away and verbally protested to Keil's supervisor, Lieutenant Shover, Ricks alleges that Shover "slammed" Ricks against the wall, causing injuries to his face, head, neck, and back. A. 15.

Ricks proceeded *pro se*, and before the merits of his claims could be tested, the District Court granted a motion to dismiss for failure to state a claim, with leave to amend. Ricks did not amend his complaint, and the District Court then dismissed his complaint with prejudice. In so doing, the District Court cited our Circuit's non-precedential opinion, *Obiegbu v. Werlinger*, where we indicated that "a small number of incidents in which a prisoner is verbally harassed, touched, and pressed against without his consent do not amount" to an Eighth Amendment violation. 581 F. App'x 119, 121 (3d Cir. 2014).

Whether sexual abuse can constitute "cruel and unusual punishment" under the Eighth Amendment is a matter of first impression in our Court. We write today to state in plainest terms that it does. Our society requires prisoners to give up their liberty, but that surrender does not encompass the basic right to be free from severe unwanted sexual contact.

We will give Ricks another chance to cure his complaint as it relates to the Eighth Amendment sexual abuse claim against Keil, with a view to the applicable law as

discussed herein. Although his sexual abuse claim as to Shover under a participation or failure-to-intervene theory was properly dismissed, Ricks' excessive force claim stands on a different footing and should have been permitted to survive the motion to dismiss. We will therefore affirm in part, vacate in part, and reverse in part the District Court's order, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. Facts

In reviewing the District Court's dismissal order, we accept as true the following facts, set forth in Ricks' complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). On the morning of September 17, 2014, Ricks, an inmate at SCI-Graterford,[1] was on his way to the law library during morning line movements when Corrections Officer Keil[2] directed him to undergo a pat-down search in a public hallway. Ricks complied and submitted to the search, which he alleges was captured by video camera.

While being searched from behind, Ricks felt Keil's erect penis (under clothing) "rubbing up against" Ricks' clothed buttocks. A. 15. Ricks stepped away from Keil and told him he was "on [his] (ASS)." *Id.* Ricks told Lt. Shover,

---

[1] Ricks has since been released on parole.

[2] In his complaint, and as reflected on this case's caption, Ricks refers to "C/O Kile." The Commonwealth later identified him as Corrections Officer Paul Keil.

4

who was overseeing the line movement, that Keil "is [r]ubbing [u]p against my [b]ehind with his genitals." *Id.*

Shover asked Ricks "what [d]id you say." *Id.* Ricks explained, and Shover "came over to [him] and just slammed [him] in the . . . wall." *Id.* This action gave Ricks a black eye, a "[b]usted" nose and lip, and injuries to his head, neck, and back.[3] *Id.* Shover then told Ricks to place his hands behind his back so he could be cuffed and returned to his cell. Ricks complied. On the way to Ricks' cell, Shover directed several racial slurs at him. Ricks also alleges that in the past, Shover had continuously harassed him, and that he had reported this conduct to other prison officials.

### B. Procedural History

After exhausting administrative remedies, Ricks filed a complaint in the United States Court for the Eastern District of Pennsylvania against Officer Keil and Lt. Shover. He sought monetary and injunctive relief for racial discrimination, harassment, sexual abuse, and the use of excessive force.[4] Proceeding *pro se*, his standard § 1983 Prisoner Complaint form briefly set out the above facts. Defendants filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss.

The District Court granted the motion, holding that Ricks failed to allege a violation of his Eighth Amendment rights. The District Court dismissed Ricks' sexual abuse

---

[3] On his standard Prisoner Complaint form, Ricks did not allege having received any medical treatment for these injuries.

[4] Ricks has not pursued his claims for racial discrimination or harassment in this appeal.

cause of action, citing our non-precedential opinion in *Obiegbu v. Werlinger*, 581 F. App'x 119, 121 (3d Cir. 2014), in which we stated that "a small number of incidents in which a prisoner is verbally harassed, touched, and pressed against without his consent do not amount" to an Eighth Amendment violation. The Court then referred to the five-factor test for excessive force set out in *Smith v. Mensinger*, 293 F.3d 641 (3d Cir. 2002), and dismissed Ricks' excessive force claim as well.

The Court dismissed Ricks' case without prejudice, granting him leave to amend his complaint. The Court instructed Ricks to describe "(a) the specific statutory basis for federal jurisdiction over this case; (b) the specific events which serve as the basis for his claim; (c) how the defendant is involved in his claims; and (d) the harm he suffered, if any, from each violation." A. 2. Ricks did not file an amended complaint within the allotted time frame, and so the District Court converted its dismissal to one with prejudice. This appeal followed.[5]

## II. DISCUSSION

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1343. We have jurisdiction under 28 U.S.C. § 1291, as the District Court's dismissal with

---

[5] Coupled with his motion for appointed counsel, which we granted, Ricks filed a motion for extension of time to amend his complaint. Ricks' attorney is appearing *pro bono*. We express our gratitude to him for accepting this matter and for the high caliber of representation of his client before our Court.

6

prejudice was a final order.  We exercise plenary review over the dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6).  *United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242, 248 (3d Cir. 2016).  We accept all factual allegations in the complaint as true, and affirm the dismissal only if the well-pleaded facts, accepted as true, do not plausibly provide a basis for relief.  *Twombly*, 550 U.S. at 570.  When a plaintiff files *pro se*, we have "a special obligation to construe his complaint liberally."  *Zilich v. Lucht*, 981 F.2d 694, 694 (3d Cir. 1992).

The Eighth Amendment guarantees the right to be free from "cruel and unusual punishments" while in custody.  *Whitley v. Albers*, 475 U.S. 312, 318 (1986) (quoting U.S. Const. amend. VIII).  A properly stated Eighth Amendment claim must allege a subjective and objective element.  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  First, it must appear from the complaint that the defendant official acted with a "sufficiently culpable state of mind."  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  Second, the conduct must have been objectively "harmful enough," or "sufficiently serious" to violate the Constitution.  *Id.* at 298, 303.

Ricks has asserted two types of Eighth Amendment claims:  one for sexual abuse (against both Defendants), and one for excessive force (against Lt. Shover only).  We examine each in turn.

## A. Sexual Abuse Claim

Whether sexual abuse of inmates by prison officials offends the Eighth Amendment is a matter of first impression in our Court.  Today, we join numerous sister Circuits in

7

holding that prison sexual abuse can violate the Constitution. *See Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012); *Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2000); *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000); *Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1290 (10th Cir. 1999); *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997). We agree that "sexual abuse of prisoners, once overlooked as a distasteful blight on the prison system, offends our most basic principles of just punishment." *Crawford v. Cuomo*, 796 F.3d 252, 260 (2d Cir. 2015). Sexual abuse invades the most basic of dignity interests: to be treated as a human being. We condemn such abuse as it is "simply not part of the penalty that criminal offenders pay for their offenses against society." *Boddie*, 105 F.3d at 861 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

### 1. Legal Framework

Though the Supreme Court has not addressed sexual abuse of inmates by prison officials, courts grappling with this issue have drawn from the Supreme Court's excessive force precedents and its holding in *Farmer v. Brennan* that sexual assaults of inmates by inmates can implicate the right to be free from cruel and unusual punishment. *See, e.g.*, *Boddie*, 105 F.3d at 861. Thus, the framework for excessive force claims set forth in *Hudson v. McMillian*—composed of a subjective and objective prong—has evolved to encompass claims for sexual abuse and harassment by prison officials as well. *See, e.g.*, *id.* (describing the *Hudson* test's objective and subjective components as applying to sexual abuse claims); *Boxer X*, 437 F.3d at 1111 (same); *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (same).

In particular, the United States Court of Appeals for the Second Circuit's reasoning in its two landmark Eighth Amendment sexual abuse cases informs our analysis. In 1997, the Second Circuit concluded in *Boddie v. Schnieder* that in some circumstances, sexual abuse could present a cognizable Eighth Amendment claim. 105 F.3d at 861. There, the plaintiff had alleged that a female corrections officer squeezed his penis and said "[Y]ou know [you're] a sexy black devil, I like you." *Id.* at 860 (first alteration in original). He further averred that she bumped into him "with both her breast so hard [he] could feel the points of her nipples against [his] chest," and that she "bumped into him . . . with her whole body vagina against penis pinning [him] to the door." *Id.*

As to the objective prong, the Court stated that "there can be no doubt that severe or repetitive sexual abuse of an inmate by a prison officer can be 'objectively, sufficiently serious' enough to constitute an Eighth Amendment violation." *Id.* at 861 (quoting *Farmer*, 511 U.S. at 834). Concerning *Hudson*'s subjective prong, the Court declared that "[w]here no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind." *Id.* The Court thus concluded that sexual abuse could meet both prongs of *Hudson*'s test for Eighth Amendment violations—although on the facts before it, the Court declined to find a sufficiently objective harm in order to state a constitutional claim. *Id.*

Nearly twenty years later, the Second Circuit clarified that "*Boddie* recognized that a *single act* of sexual abuse may violate the Eighth Amendment if, as in this case, it is entirely

9

gratuitous and devoid of penological purpose." *Crawford*, 796 F.3d. at 257 (emphasis added). In *Crawford*, one of the two plaintiffs alleged that during a frisk in the middle of a visit with the inmate's wife, the defendant corrections officer fondled and squeezed his penis to "make sure [he] did not have an erection." *Id.* at 255. The other plaintiff alleged that during a search, the officer grabbed and held his penis and asked "what's that?" *Id.* The officer then pinned the plaintiff to the wall while continuing to "squeeze" and "fondle" the area around his penis and "roam" his hands down the inmate's thigh. *Id.* The officer also threatened the inmate with solitary confinement if he resisted the abuse. *Id.* The Court explained that "[to] show that an incident or series of incidents was serious enough to implicate the Constitution, an inmate need not allege that there was penetration, physical injury, or direct contact with uncovered genitalia." *Id.* at 257. Rather, the Court held that "[a] corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or to humiliate the inmate, violates the Eighth Amendment." *Id.* at 254.

Following *Boddie* and *Crawford*, we resolve that a properly stated Eighth Amendment sexual abuse claim need not necessarily depend on the number of incidents. We agree with the statement made by the Court in *Crawford* that "a single incident of sexual abuse, if *sufficiently severe or serious*, may violate an inmate's Eighth Amendment rights no less than repetitive abusive conduct." *Id.* at 257 (emphasis added).

10

Here, without analyzing Ricks' sexual abuse claim, the District Court cited to our non-precedential opinion in *Obiegbu v. Werlinger*, 581 F. App'x 119 (3d Cir. 2014), for the proposition that a single incident cannot constitute a constitutional violation. While we cannot be sure if the District Court intended to impose a formal numerosity requirement on Ricks' claims, we conclude that an emphasis on the number of incidents as a gatekeeper for objective seriousness is misplaced. We decline to adopt a *per se* rule regarding the number of incidents as bearing on severity. Instead, we conclude that the test will turn on an analysis of a subjective and an objective component. That is, the incident must be objectively, sufficiently intolerable and cruel, capable of causing harm, and the official must have a culpable state of mind. We next turn to what each prong requires.

Regarding the subjective prong, we consider whether the official had a legitimate penological purpose or if he or she acted "maliciously and sadistically for the very purpose of causing harm." *Albers*, 475 U.S. at 319–320 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). Because this is a mental state, "unless admitted, [it] has to be inferred rather than observed" from conduct such as harassing comments, or an overly invasive search in violation of facility policy. *Washington*, 695 F.3d at 643; *see Crawford*, 796 F.3d at 258 ("There is no penological justification for checking to see if an inmate has an erection . . . ."). The nature of the violative conduct itself will often be enough to demonstrate the prison official's culpable state of mind. *See Crawford*, 796 F.3d at 252 ("[I]f . . . the officer intentionally brings his or her genitalia into contact with the inmate in order to arouse or gratify the officer's sexual desire or humiliate the inmate, a

11

violation is self-evident because there can be no penological justification for such contact.").

While the subjective inquiry involves a judgment call that may be relatively easy to make based on the specific circumstances, the objective prong seems more difficult. What level of inappropriate conduct objectively constitutes a violation?  At the outset, we readily acknowledge that this kind of line-drawing is difficult in part because it is uncomfortable.  It requires parsing a set of allegations or facts that may be deeply troubling, and making a judgment as to whether the conduct alleged implicates the Constitution. Nevertheless, it is within our purview to provide guidance as to which claims may "involve a harm of federal constitutional proportions." *Boddie*, 105 F.3d at 861.

When deciding objective harm, "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action."  *Hudson*, 503 U.S. at 9.  Indeed, "[t]he Constitution 'does not mandate comfortable prisons.'" *Farmer*, 511 U.S. at 832 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).  Rather, in contrast to common tort law, the Eighth Amendment shields inmates from only those actions "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 10 (quoting *Whitley*, 475 U.S. at 327).  The objective element "is therefore contextual and responsive to 'contemporary standards of decency.'"  *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  And "conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional."  *Rhodes*, 452 U.S. at 347.

Ricks has urged us to adopt a standard that would collapse the subjective and objective inquiries, so that a finding of a lack of penological purpose would be determinative. He draws this standard from *Crawford*, in which the Court declared that: "In determining whether an Eighth Amendment violation has occurred, the principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate." 796 F.3d at 257–58.

We do not take issue with the focus of the analysis by other courts on whether the official performing the search had a penological purpose. *See, e.g.*, *id.* at 258 (concluding that "no amount of gratuitous or sexually-motivated fondling of an inmate's genitals" is constitutional). That is, when a search involves intrusive, intimate touching to ensure that contraband and weapons are not present, an inquiry into its purpose is legitimate. For instance, in *Crawford*, the corrections officer allegedly "fondled and squeezed [the plaintiff's] penis" during a visit with the plaintiff's wife, to "make sure [he] did not have an erection." *Id.* at 258. We have no doubt that this level of touching would be objectively, sufficiently serious to violate the Constitution. But because it occurred during a search, the Court needed to determine whether that search was legitimate or pretextual. Moreover, the Court clarified that "even if contact between an officer and inmate's genitalia was initially justified, if the officer finds no contraband, continued sexual contact may be actionable." *Id.* at 257.

Absent a legitimate penological purpose, the type of touching involved in, for instance, a body-cavity search,

13

would be undoubtedly cruel and unusual. And a desire to humiliate the inmate or gratify the officer—inferred through the officer's conduct—is a reasonable way to distinguish between invasive touching that is permitted by law to ensure safety and that which is not. An analysis focused on intent of the officer is therefore appropriate when evaluating whether an objectively intrusive search is constitutional.

We have previously discussed this distinction as it pertains to claims for unconstitutional prison conditions. In *Parkell v. Danberg*, where an inmate was "subjected to thrice-daily visual body-cavity searches," we concluded that those searches would only be cruel and unusual if they were "undertaken maliciously or for the purposes of sexually abusing" the plaintiff. 833 F.3d 313, 335–36 (3d Cir. 2016) (quoting *Crawford*, 796 F.3d at 258). We found a focus on intent necessary to demarcate permissible from *ultra vires* invasiveness. Accordingly, the inquiry to define culpable state of mind versus legitimate penological purpose is a necessary, but not sufficient, inquiry.

Fusing the subjective and objective inquiries, as Ricks urges we must, would constitutionalize any alleged touch, if the corrections officer lacked a penological purpose. We decline to entirely eliminate the objective prong of the analysis by collapsing it with the subjective prong. That is to say, even if sexualized touching lacks a penological purpose, it may still fall below the threshold of constitutional cognizability based on a lack of objective seriousness.

As noted above, a single incident, if sufficiently serious or severe, can run afoul of the Eighth Amendment as surely as can multiple, less egregious incidents. While a

14

pattern of harassment and sexualized touching may more clearly be considered objectively "cruel and unusual," that does not diminish the harm that may arise from an isolated act. *See Crawford*, 796 F.3d at 257 (stating that "[r]ecurrences of abuse" are relevant, but not dispositive, to severity).

Moreover, while our framework explicitly draws from the Supreme Court's excessive force jurisprudence, the absence of force or injury will not doom a sexual abuse claim outright. Although physical injury will certainly signal severity, it is not the touchstone for objective seriousness.[6] Whether an action is sufficiently harmful to be cruel and unusual cannot be determined only by looking at physical injury, because an abusive sexual encounter may not leave any marks. Indeed, sexual abuse "tend[s] rather to cause significant distress and often lasting psychological harm." *Washington*, 695 F.3d at 643.

Whether conduct is objectively cruel and unusual is better considered with sensitivity to "evolving standards of decency." *Graham v. Florida*, 560 U.S. 48, 58 (2010) (quoting *Estelle*, 429 U.S. at 102). Ricks posits that the

---

[6] Indeed, Congress recently amended the Prison Litigation Reform Act ("PLRA") to add to its physical injury requirement an avenue for recovery for emotional damages for sexual abuse, perhaps acknowledging that sexual abuse may not result in physical injury. *See* Violence Against Women Reauthorization Act, Pub. L. No. 113-12, § 1101, 127 Stat. 54, 134 (Jan. 3, 2013), codified at 42 U.S.C. § 1997e (amending the section imposing the physical injury requirement to insert "or the commission of a sexual act").

15

current standard vis-à-vis sexualized touching in prison contexts is "zero tolerance." Opening Br. at 15. We are aware that societal norms surrounding unwanted sexual attention are changing rapidly, and we are mindful that behavior that may not have warranted damages in the past may so warrant today. We nonetheless are not persuaded that the current standard is zero tolerance for all minor sexualized touching in prison, such that all such claims are objectively serious to a constitutional degree.

When considering contemporary standards of decency, we begin by reviewing "objective indicia of consensus, as expressed in particular by the enactments of legislatures that have addressed the question." *Roper v. Simmons*, 543 U.S. 551, 564 (2005). We also examine the "consistency of the direction of change." *Atkins v. Virginia*, 536 U.S. 304, 315 (2002).

In recent years, both the federal government and all but two of the states have passed legislation outlawing sexual activity between guards and inmates. *See Crawford*, 796 F.3d at 259–60 nn. 5–6 (collecting state statutes). As we elaborate below, these enactments reflect a societal standard that conduct falling outside the definition for "rape" nonetheless is taken seriously and compensable by damages at law. They do not, however, compel a finding that all inappropriate touching is *per se* unconstitutional.

The Prison Rape Elimination Act ("PREA"), passed unanimously by Congress, explicitly seeks to "establish a zero tolerance standard for the incidence of prison rape in the prisons of the United States." 34 U.S.C. § 30302(1). Rape is objectively intolerable, cruel, and unusual. But the statute

16

defines "rape" so as to overtly encompass severe misconduct. *See id.* § 30309(9) (defining "rape" as "the carnal knowledge, oral sodomy, sexual assault with an object, or sexual fondling of a person, forcibly or against that person's will").

Similarly, the Prison Litigation Reform Act ("PLRA"), intended to address an overwhelming number of prisoner-initiated lawsuits in federal courts, limits recovery for mental and emotional injuries unless a litigant can show "physical injury or the commission of a sexual act." 42 U.S.C. § 1997(e). And "sexual act" as defined explicitly excludes touching that is unintentional or "through the clothing." *See* 18 U.S.C. § 2246(2). We therefore do not read the PREA and the PLRA as evincing Congressional intent to create a zero-tolerance standard for minor sexual touching.

Nor do similar state enactments criminalizing sexual contact between inmates and prison officials envisage a zero tolerance standard. For instance, Pennsylvania, where SCI Graterford is located, criminalizes guard-inmate rape, sexual assault, and "indecent contact." Indecent contact, the least serious of the defined offenses, is "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa. Cons. Stat. §§ 3101; 3124.2. Thus, while the "consistency of the direction of change" towards outlawing such contact assures us that our society no longer accepts sexual abuse, that change does not oblige us to constitutionalize "every malevolent touch."

As this inquiry is necessarily contextual, fact-specific, and to be conducted in the first instance by the District Court, we decline to craft a mechanical factors test for when sexual

contact is objectively, sufficiently serious. The scope, place, and timing of the offensive conduct will bear on its severity, as will the details of the alleged contact. But it goes without saying that objectively serious sexual contact would include sexualized fondling, coerced sexual activity, combinations of ongoing harassment and abuse, and exchanges of sexual activity for special treatment or to avoid discipline. In context, including whether it violates established prison procedures, other sexualized touching may also be objectively serious.

### 2. Application

We now consider Ricks' claims against Officer Keil and Lt. Shover.

### a. Sexual Abuse Claim Against Officer Keil

We are wary of setting a constitutional floor based on the fact patterns in our sister Circuits' Eighth Amendment sexual abuse cases. Many of those cases were primarily based on more manifestly violent misconduct. *See, e.g.*, *Crawford*, 796 F.3d at 255 (allegations that prison official fondled and squeezed inmate's penis while making threatening remarks); *Giron*, 191 F.3d at 1284 (allegations of rape). Even in *Boxer X*, where the United States Court of Appeals for the Eleventh Circuit decided under its own excessive force precedent that the inmate's allegations were *de minimis*, he had alleged that a prison guard had solicited his masturbation under threat of reprisal. *Boxer X*, 437 F.3d at 1109.

18

Nevertheless, a situation falling below the level of objective seriousness present in those cases is not *per se* excluded from constitutional cognizance. This is a fact-specific inquiry. Because we cannot definitively say that, consistent with his complaint, Ricks could not plead other facts relevant to objective seriousness under the standard we have articulated, he should be afforded a reasonable opportunity to cure his complaint by amendment.

To be sure, Officer Keil's alleged behavior was, by any standard, inappropriate and unprofessional. It is not clear from the face of Ricks' complaint whether the touching was incidental to a legitimate pat-down search. Yet, the episode as alleged appeared to be isolated, momentary, and avoided by Ricks' ability to step away from the offending touch. Absent more specific allegations as to the severity of Keil's conduct or the surrounding context, including the need for the search, we cannot conclude that he plausibly violated Ricks' right to be free from "cruel and unusual punishments." By this, we do not intend to trivialize Ricks' allegations, nor suggest that he did not suffer harm. Rather, the Constitution may require more detail in his pleadings before a federal court recognizes his claim.

We have maintained that imprisoned *pro se* litigants "often lack the resources and freedom necessary to comply with the technical rules of modern litigation." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013). Now that Ricks is represented ably by *pro bono* counsel, he should be given another chance to amend his complaint to allege facts specifying the incident's seriousness or severity, as well as its purpose, and any other facts that would provide context. Whether his complaint as amended will be sufficient is a

matter yet to be determined. In particular, the controlling legal principles we announce today must be applied to the facts alleged. But Ricks should have the opportunity to present allegations with due consideration to the law which controls his case. We will therefore vacate the District Court's dismissal of his sexual abuse claim against Keil and remand so that he can re-plead his claim.

### b. Sexual Abuse Claim Against Lieutenant Shover

Ricks raises an independent sexual abuse claim against Lt. Shover, whom he claims participated in the alleged abuse by failing to end it. As pleaded, this claim is insubstantial because the encounter was so brief that, even viewed in the light most favorable to Ricks, Shover simply would have had no opportunity to instruct Keil to stop.

The incident's brevity similarly defeats Ricks' failure-to-intervene claim against Shover. An officer's failure to stop an ongoing constitutional violation violates the Eighth Amendment when he "had a reasonable opportunity to intervene and simply refused to do so." *Smith*, 293 F.3d at 650–51. According to Ricks, Shover had the opportunity when Ricks verbally protested to him, and refused to intervene and punished Ricks for seeking assistance. But again, the alleged violation was over before Ricks called out to Shover. And *Smith* cautions that liability will only attach if the opportunity to intervene is "realistic and reasonable." *Id.* at 651. While Shover's alleged reaction is disturbing, it is better addressed through an excessive force claim, as we discuss below, than through a failure-to-intervene claim. We therefore will affirm in part, because the District Court

20

properly dismissed this claim, and amendment with respect to this claim would be futile.

## B. Excessive Force Claim

Ricks frames his excessive force claim only against Lt. Shover. The thrust of his complaint is straightforward: he alleges that Shover unlawfully used excessive force when he slammed Ricks into a wall with enough force to cause injury. He further avers that he sustained injuries to his head, neck, and back, a black eye, and a "busted" nose and lip. A. 15. He does not plead any facts respecting medical treatment of these alleged injuries.

We have clarified that "the pivotal inquiry in reviewing an inmate's § 1983 claim for excessive force is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Smith*, 293 F.3d at 649 (quoting *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000)). In conducting this analysis of the officer's intent, we consider five factors: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response." *Id.* (quoting *Brooks*, 204 F.3d at 106). The objective component of the excessive force inquiry is met when "the inmate's injury was more than *de minimis*." *Fuentes v. Wagner*, 206 F.3d 335, 345 (3d Cir. 2000).

Here, the District Court correctly cited *Smith*, but did not evaluate the facts under those factors. Ricks avers that a proper analysis under the factors would lead to the conclusion that he plausibly alleged an Eighth Amendment violation. Affording him, as a plaintiff proceeding *pro se*, the benefit of any doubt, we agree that his complaint should not have been dismissed.

While Ricks' pleading may not have been detailed enough for the Court to analyze all of the factors, certainly the allegations of his being "slammed" and the injuries caused suggest a use of force that was out of proportion to the relative calm of the situation. With further pleading or discovery, the need for the use of force (like the penological purpose or state of mind), threat to safety, and extent of injuries can be further developed. But, viewing the sparse record and our responsibility to construe Ricks' complaint liberally, we cannot conclude that he has failed to state a plausible claim for relief.[7]

While we express no view as to the merits of Ricks' claim against Shover, we conclude that the District Court erred by dismissing his complaint for failure to state a claim. Accordingly, we will reverse the District Court's order with respect to his excessive force claim, and remand for further proceedings.

---

[7] We also note that at oral argument, Defendants' counsel all but conceded the point. *See* Oral Argument at 31:53, *Ricks v. Shover* (No. 16-2939) (3d Cir. Feb. 9, 2018).

### III. CONCLUSION

The District Court based its dismissal of Ricks' sexual abuse claim against Officer Keil on an incomplete understanding of the law that we clarify today. And although it properly dismissed Ricks' independent sexual abuse claim against Shover, the Court prematurely dismissed his excessive force claim against him. Therefore, we will vacate the Court's order insofar as it dismissed the sexual abuse claim against Officer Keil, affirm the portion of the order dismissing the sexual abuse claim against Shover, reverse the portion of the order dismissing the excessive force claim against Shover, and remand for further proceedings consistent with this Opinion.