BLD-238                                                    **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1245
_____

KAREEM ARMSTRONG,
                                                    Appellant

v.

C.O. DIRAIMO
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 1-17-cv-00237)
Magistrate Judge:  Honorable Richard A. Lanzillo

_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B) or
Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
July 18, 2019
Before:  AMBRO, KRAUSE, and PORTER, Circuit Judges

(Opinion filed: July 22, 2019)
_____

OPINION[*]
_____

PER CURIAM

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Kareem Armstrong appeals the Magistrate Judge's[1] grant of summary judgment in his civil rights action. We will summarily affirm.

Armstrong's case involves a random pat-down search while he was incarcerated at State Correctional Institution at Albion. On October 8, 2016, Armstrong and another inmate, Tyrone Green, were returning to their housing unit after picking up medication when Correctional Officer Diraimo stopped them and ordered Armstrong over to the guard station for a random pat-down search. Armstrong alleged that during this search Diraimo placed his hands inside Armstrong's boxer shorts, stroked his penis once, and grabbed his scrotum. When Armstrong objected, Diraimo allegedly stated, "I do what the fuck I want," and "I felt bigger."[2] Armstrong subsequently filed a complaint pursuant to the Prison Rape Elimination Act ("PREA"), 34 U.S.C. § 30301, et seq., against Diraimo.

On March 20, 2017, Armstrong was returning from the medication line when Diraimo again ordered him to submit to a random pat-down. Armstrong informed Diraimo that Diraimo was not permitted to talk to him or touch him because of the pending PREA investigation. Diraimo allegedly responded by stating, "You enjoy the way, I touch you and the way you stick your ass out got my dick hard. Your PREA complaint don't work and when, I caught you alone I'm gonna show you what a real dick

---

[1] The parties consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1).

[2] In his sworn declaration, Green stated that he heard Armstrong object, asking "why are you touching me there?" to which he "heard Diraimo state aggressively 'I do the fuck what I want' and 'I felt bigger.'" Dkt. #37 at 7.

looks like." Dkt. #55 at 4. Diraimo did not conduct a pat-down, and Armstrong was free to leave. Diraimo did not touch Armstong at any point during their second encounter.

Armstrong filed suit pursuant to 42 U.S.C. § 1983, alleging violations of the First, Eighth, and Fourteenth Amendments for retaliation, sexual harassment, and discrimination, respectively. Armstrong argued that Diraimo's pat-down search on October 8, 2016, violated the Eighth Amendment and that Diraimo intentionally discriminated[3] against him for that pat-down. Armstrong further argued that the second encounter on March 20, 2017, was in retaliation for the PREA complaint. After cross motions for summary judgment, the Magistrate Judge granted summary judgment in favor of Diraimo. In granting summary judgment, the Magistrate Judge held that Armstrong failed to establish essential elements in his Eighth Amendment claim for sexual harassment. As to Armstrong's claim of discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment, the Magistrate Judge held that Armstrong had failed to develop any evidentiary basis that would support his claim of discrimination, in addition to failing to show that he was a member of a protected class. Finally, the Magistrate Judge ruled that Armstrong's claim of retaliation for the March 20, 2017, encounter failed because Armstrong did not suffer any adverse action. Armstrong timely appealed.

---

[3] Armstrong asserted that Diraimo violated the Fourteenth Amendment "[b]ecause everyone who is similarly situated as me, being a prisoner, has to be treated all the same way. So if he's pat searching me inappropriately, but not pat searching anyone else inappropriately, then he's just being discriminatory towards me." Dkt. #46-1 at 20.

3

We have jurisdiction over the appeal of the Magistrate Judge's judgment. See 28 U.S.C. §§ 636(c)(3), 1291. We review the summary judgment ruling de novo. Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 826 (3d Cir. 2011). Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Kaucher v. County of Bucks, 455 F.3d 418, 422–23 (3d Cir. 2006). A party opposing summary judgment must cite to specific materials in the record that demonstrate the existence of a disputed issue of material fact. Fed. R. Civ. P. 56(c)(1)(A). Summary judgment must be granted against a party who fails to establish the existence of an essential element to that party's case, if that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

Armstrong asserted that the random pat-down on October 8, 2016, violated his Eighth Amendment "right to be free from 'cruel and unusual punishments' while in custody." Ricks v. Shover, 891 F.3d 468, 473 (3d Cir. 2018). In Ricks, we recognized that sexual abuse of an inmate by a corrections officer may violate the Eighth Amendment. See id. Like other Eighth Amendment claims, the framework for analyzing a sexual abuse claim consists of objective and subjective components. Id. at 474–75. "That is, the incident must be objectively, sufficiently intolerable and cruel, capable of causing harm, and the official must have a culpable state of mind." Id. at 475. A single incident, if sufficiently serious or severe, can violate the Eighth Amendment. Id. at 477. However, the standard is not "zero tolerance for all minor sexualized touching in prison,

4

such that all such claims are objectively serious to a *constitutional* degree." Id. (emphasis added).

Upon review, we agree with the Magistrate Judge that Armstrong failed to provide evidence to support the existence of the subjective component mentioned above.[4] "Regarding the subjective prong, we consider whether the official had a legitimate penological purpose or if he or she acted 'maliciously and sadistically for the very purpose of causing harm.'" Id. at 475; see also Crawford v. Cuomo, 796 F.3d 252, 257–58 (2d Cir. 2015) ("In determining whether an Eighth Amendment violation has occurred, the principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate."). Here, the alleged sexual abuse occurred during a random pat-down of Armstrong, and thus the alleged contact with Armstrong's genitals was incidental to a legitimate penological purpose. See Crawford, 796 F.3d at 257–58; see also Byrd v. Maricopa Cty. Sheriff's Dep't, 629 F.3d 1135, 1152 (9th Cir. 2011) (Smith, J. concurring in part and dissenting in part) (noting a "pat-down is done to detect contraband that may be taped to the contours of an inmate's body, including the genital area"). Furthermore, the evidence in the summary judgment record does not suggest that Diraimo was conducting the pat-down as a pretext

---

[4] Accordingly, we need not address whether the incident on October 8 satisfied the objective element.

5

to sexually arouse or gratify himself.[5]  Accordingly, we agree that summary judgment was appropriate.  See Celotex Corp., 477 U.S. at 322–23.

As to Armstrong's other claims of discrimination and retaliation, we conclude, for the reasons already thoroughly detailed by the Magistrate Judge, that summary judgment was appropriate.  The Magistrate Judge correctly held that Armstrong failed to establish he is a member of a suspect class; thus, his equal protection claim failed.  See Abdul-Akbar v. McKelvie, 239 F.3d 307, 317 (3d Cir. 2001) (en banc) (noting prisoners are not a suspect class for equal protection purposes).  To the extent Armstrong based his equal protection claim on a "class of one" theory, he failed to point to evidence in the summary judgment record that Diraimo treated him differently from his fellow inmates.  See PG Publ'g Co. v. Aichele, 705 F.3d 91, 114–15 (3d Cir. 2013).

Finally, the Magistrate Judge correctly concluded that Armstrong's retaliation claim failed because he did not point to evidence showing that he suffered any adverse action.  See Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016) (listing elements for a retaliation claim); Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000) (noting an adverse action is one "sufficient to deter a person of ordinary firmness from exercising

---

[5] Diraimo's response to Armstrong's objection to the search—that he "do[es] the fuck what [he] want[s]"—does not signify that the search was sexually motivated; rather, it was Diraimo's unsophisticated justification for the search.  See Crawford, 796 F.3d at 258 (noting prison officials looking for contraband may subject inmates to cavity searches that are of an "intensely personal nature").  Diraimo's subsequent statement that he had "felt bigger" is a juvenile taunt.  To be sure, Diraimo's comments were inappropriate and unprofessional, but neither comment suggests a "culpable state of mind" indicating that the search was undertaken maliciously or for the purpose of sexually abusing Armstrong.  See id. at 256.

his First Amendment rights." (internal quotation marks omitted)).  Moreover, the only retaliatory conduct alleged was a single verbal interaction with Diraimo approximately five months after the PREA complaint was filed.  See Watson, 834 F.3d at 424 (noting an inmate "can establish the third element of a prima facie case of retaliation with evidence of: (1) an unusually suggestive *temporal proximity* between the protected activity and the allegedly retaliatory action, or (2) a *pattern of antagonism* coupled with timing to establish a causal link" (emphasis added)).

For all of the foregoing reasons, we will summarily affirm.  See 3d Cir. L.A.R. 27.4; 3d Cir. I.O.P. 10.6.