2024 PA Super 175

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| CHARLES STEVENS | : | |
| | : | |
| Appellant | : | No. 1495 MDA 2023 |

Appeal from the Judgment of Sentence Entered June 2, 2023
In the Court of Common Pleas of Huntingdon County Criminal Division at
No(s):  CP-31-CR-0000203-2022

BEFORE:   OLSON, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

OPINION BY KUNSELMAN, J.:                    **FILED: AUGUST 8, 2024**

Charles Stevens appeals from the judgment of sentence imposing two to four years' incarceration after a jury convicted him on four counts – two counts of possessing an offensive weapon and two counts of possessing a weapon or implement of escape.[1]   Stevens contends Prohibited Offensive Weapons is a lesser, included offense of Weapons or Implements of Escape. Thus, he believes that the sentencing court should have merged his four convictions into two.  As a matter of first impression, we hold that those offenses do not merge for purposes of sentencing and affirm.

On December 19, 2021, Stevens was an inmate at SCI-Huntingdon, and the corrections officers searched his cell.  They discovered "a homemade knife under his mattress."  Trial Court Opinion, 1/12/24, at 1.  Stevens admitted to the officers that the knife was his.  He also had a second weapon hidden on

_____

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 908(a) and 5122(a)(2).

his person, a homemade slungshot,[2] which he voluntarily surrendered.  It was formed using "a heavy, electric motor from a fan, approximately 2½-3 inches square, tied to a homemade lanyard . . . approximately a foot or so long."  *Id.* at 1-2.

The Commonwealth charged Stevens with multiple weapon-possession offenses for each of the two homemade items.  The case proceeded to a jury trial.

During his opening statement, Stevens' attorney conceded that the facts related above were true.  Rather than attack the Commonwealth's evidence directly, he framed the case as one of potential self-defense.  He suggested to the jury that Stevens possessed the homemade weapons to protect himself, if another inmate ever threatened or assaulted him.

Furthermore, while cross-examining the Commonwealth's witnesses, Stevens' attorney established that Stevens was one of the smaller inmates in the prison, that the corrections officers had never seen Stevens use the two weapons to attack anyone, that the weapons could be used defensively or as show of force to prevent potential violence, and that the United States Congress passed the Prison Rape Elimination Act ("PREA").[3]  A correction

_____

[2] THE MERRIAM-WEBSTER DICTIONARY defines "slungshot" as " a striking weapon consisting of a small mass of metal or stone fixed on a flexible handle or strap."  Merriam-Webster Online, Definition of "Slungshot," available at https://www.merriam-webster.com/dictionary/slungshot (last visited 7/19/24).

[3] 34 U.S.C. §§ 30301-30309.

officer explained that, for prison staff, the federal statute mandates training on how "to report and how to handle evidence." N.T., 3/9/23, at 40.[4]

After the Commonwealth rested its case-in-chief, Stevens elected not to testify. Instead, he asked the trial court to take judicial notice of the PREA and to read the following congressional findings from the statute to the jury:

> (2) Insufficient research has been conducted and insufficient data reported on the extent of prison rape. However, experts have conservatively estimated that at least 13 percent of the inmates in the United States have been sexually assaulted in prison. Many inmates have suffered repeated assaults. Under this estimate, nearly 200,000 inmates now incarcerated have been or will be the victims of prison rape. The total number of inmates who have been sexually assaulted in the past 20 years likely exceeds 1,000,000.
>
> \* \* \*
>
> (5) Most prison staff are not adequately trained or prepared to prevent, report, or treat inmate sexual assaults.
>
> (6) Prison rape often goes unreported, and inmate victims often receive inadequate treatment for the severe physical and psychological effects of sexual assault--if they receive treatment at all.
>
> \* \* \*
>
> (12) Members of the public and government officials are largely unaware of the epidemic character of prison rape and the day-to-day horror experienced by victimized inmates.

---

[4] According to the United States Court of Appeals for the Third Circuit, the PREA, "passed unanimously by Congress, explicitly seeks to establish a zero tolerance standard for the incidence of prison rape in the prisons of the United States." *Ricks v. Shover*, 891 F.3d 468, 477 (3d Cir. 2018). While "enacted for the purpose of remedying the inadequate response of corrections officials to prison rape . . . the PREA did not . . . create any new rights for inmates." *Lee v. Kramer*, 2017 WL 6729865 at \*3 (W.D. Pa. 2017).

34 U.S.C.A. § 30301.

The Commonwealth objected on the grounds that the congressional findings were irrelevant, prejudicial, and potentially misleading to the jury. *See* N.T., 3/9/23, at 68-69. The prosecuting attorney argued that there were no "allegations of sexual assault or rape throughout this trial" and Stevens did not establish "his initial burden of the self-defense charge." *Id.* at 69.

In response, defense counsel conceded that the congressional findings "maybe [do] not apply to Mr. Stevens, but to the institution where he was a resident, an inmate at the time. So, I think it's a little broader . . . applying to all state correctional institutions that are in the Commonwealth of Pennsylvania [and,] in fact, throughout the United States." *Id.*

The trial court ruled from the bench, "it's a proper question to ask the court to take judicial notice of statutes. But the court's problem . . . is . . . the relevance to the evidence that has been presented during the course of the trial." *Id.* at 71. In other words, the trial court did not refuse to admit the statute on the grounds that it could not take judicial notice of the PREA. It sustained the Commonwealth's objection that the proffered congressional findings were irrelevant to the case.

The defense rested, and the trial court rejected Stevens' request for a jury instruction on self-defense. The jury convicted Stevens of two counts of possessing a prohibited offensive weapon and of two counts of possessing a weapon or implement of escape. The sentencing court refused to merge the four convictions into two. Stevens timely appealed.

He raises two appellate issues:

1.   Whether the trial court erred and/or abused its discretion in failing to take judicial notice of certain provisions of the [PREA] in Stevens' request/attempt to assert a self-defense claim at trial?

2.   Whether the [sentencing] court erred and/or abused its discretion in failing to merge the sentences on the two counts of . . . Prohibited Offensive Weapons . . . and two counts of  . . . [Weapons or Implements of Escape, because] their elements are sufficiently similar to be identical?

Stevens' Brief at 5 (some capitalization removed).  We consider each issue in turn.

*A.    Exclusion of the PREA Findings from Evidence*

First, Stevens claims the trial court erred or abused its discretion by not taking judicial notice of the congressional findings within the first section of the PREA.  As explained above, however, the trial court did not refuse to take judicial notice of the federal statute.  Instead, the court refused to admit the congressional findings on relevancy grounds.  Thus, the issue, as framed by Stevens on appeal, does not comport with the procedural posture of the case, and the part of his argument on Pennsylvania Rule of Evidence 201 (on judicial notice) is unnecessary, because the trial court did not reject the evidence on that basis.  ***See id.*** at 20-22.

Even so, the first part of Stevens' argument contends the PREA findings were relevant to his theory that he possessed the weapons as a form of prophylactic self-defense.  He explains that he wished to exercise his right not to testify at trial, while simultaneously creating a basis from which the jury

could infer he was fearful for his safety while in prison. Based on that alleged fear, Stevens suggests that he was justified in hiding the homemade knife under his mattress and the homemade slungshot on his person. He therefore sought to admit the findings of the PREA to prove that he had an estimated 13% chance of being raped in prison. Stevens asserts that "the PREA statute was highly relevant, but the trial court disagreed . . . ." *Id.* at 17. *Id.* As such, he believes "that the trial court erred in excluding this cited factual evidence from the [PREA] meaning that the conviction and sentences . . . must be vacated" and a new trial awarded. *Id.* at 18.

Stevens' relevancy argument reflects a failure to appreciate the full implications of our deferential standard of review for evidentiary issues, despite Stevens correctly stating that standard. At the outset of his brief, he acknowledged that:

> When we review a trial court ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party.
>
> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

*Id.* at 2 (quoting *Commonwealth v. Talley*, 236 A.3d 42, 55 (Pa. Super. 2020), *aff'd*, 265 A.3d 485 (Pa. 2021).

Despite properly identifying our deferential standard of review at the outset of his brief, Stevens does not present this Court with an abuse-of-discretion argument. Critically, he disregards the standard's prohibition – *i.e.*, that an abuse of discretion "is **not merely** an error of judgment." **Talley**, 236 A.3d at 55 (emphasis added). In crafting his appellate arguments regarding the excluded PREA findings, Stevens neglects our standard of review and simply explains why he disagrees with the trial court's ruling.

His argument on relevancy is merely a claim that the trial court erred in judgment. He does not identify any of the three types of abuse of discretion in the trial court's reasoning from the bench or in its 1925(a) Opinion, concerning its ruling that the congressional findings were irrelevant under the facts of this case. Thus, Stevens makes a *de novo* argument and asks us to substitute our judgment for that of the trial court. This we may not do.

Even if we disagreed with a trial court's judgment that the PREA findings were irrelevant under the facts that Stevens produced while cross-examining the Commonwealth's witnesses, we have long held that an "abuse of discretion is not merely an error of judgment, but rather a misapplication of the law or an unreasonable exercise of judgment." **Johnson v. Johnson**, 222 A.3d 787, 789 (Pa. Super. 2019). Thus, it is insufficient to convince us that "the lower tribunal reached a decision contrary to the decision that the appellate court would have reached." **B.B. v. Dep't of Pub. Welfare**, 118 A.3d 482, 485 (Pa. Cmwlth. 2015) (some punctuation omitted). Instead, Stevens needs to

persuade us that one of the three types of abuses of discretion occurred. **See Talley**, **supra**.

As we have repeatedly explained, "to mount an abuse-of-discretion attack against the trial court's [ruling, Stevens] needed to demonstrate how the trial court's ruling overrode the law; was manifestly unreasonable; or the product of bias, prejudice, ill-will or partiality." **Commonwealth v. Rogers**, 259 A.3d 539, 541 (Pa. Super. 2021), *appeal denied*, 280 A.3d 866 (Pa. 2022). Stevens make no such contentions when arguing his evidentiary issue. As such, he does "not contend, much less persuade us, that the trial court overrode the law; made a manifestly unreasonable decision; or was motivated by bias, prejudice, or ill will." **Id.** at 542.

Because Stevens fails to prove that an abuse of discretion occurred, we dismiss his first appellate issue as meritless.

### B. Merger of Convictions

As his second issue, Stevens contends that two of his sentences are for lesser, included offenses of his other two sentences. He frames the issue as whether all of the statutory elements of the Prohibited Offensive Weapons charges are included in the statutory elements of the Weapons or Implements of Escape charge.[5] **See** Stevens' Brief at 24. In Stevens' view, his convictions must merge from four to two, as a matter of law.

---

[5] Neither party cites any case law addressing the issue of whether the two statutes before us merge for purposes of sentencing and our research revealed none.

"A claim that crimes should have merged for sentencing purposes raises a challenge to the legality of the sentence." ***Commonwealth v. Quintua***, 56 A.3d 399, 400 (Pa. Super. 2012). "Therefore, our standard of review is *de novo*, and our scope of review is plenary." ***Id.***

The General Assembly has mandated "crimes shall merge for sentencing purposes [if] the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense." 42 Pa.C.S.A. § 9765. "The only way two crimes merge for sentencing is if all elements of the lesser offense are included within the greater offense." ***Commonwealth v. Merced***, 308 A.3d 1277, 1282 (Pa. Super. 2024), *reargument denied* (Mar. 27, 2024). In other words, "if both crimes require proof of at least one element that the other does not, then the sentences do not merge." ***Id.***

Here, the crimes in question are (1) Prohibited Offensive Weapons and (2) Weapons or Implements of Escape. The crime of Prohibited Offensive Weapon occurs when, "except as authorized by law, [a person] makes repairs, sells, or otherwise deals in, uses, or possesses any offensive weapon." 18 Pa.C.S.A. § 908(a). The crime of Weapons or Implements of Escape occurs when "[a]n inmate . . . unlawfully procures, makes or otherwise provides himself with, or unlawfully has in his possession or under his control, any weapon, tool, implement or other thing which may be used for escape." 18 Pa.C.S.A. § 5122(a)(2).

In his brief, Stevens focuses primarily on the definitions of "offensive weapon" in Section 908(c) and of "weapon" in Section 5122(b)(2) of the Crimes Code. He observes, and we agree, that "weapon," for purposes of the crime of Weapons or Implements of Escape, is more broadly defined than the definition of "offensive weapon," for purposes of Prohibited Offensive Weapons.[6] Stevens therefore contends that the crime of Prohibited Offensive Weapons is necessarily a lesser, included offense of Weapons or Implements of Escape.

However, this ignores the fact that the two statutes have unique elements. The Prohibited Offensive Weapons statute applies to any "person" who possesses the weapons defined in that section. 18 Pa.C.S.A. § 908(a). By contrast, the Weapons or Implements of Escape statute may only be committed by "an inmate" of statutorily delineated institutions, including state prisons. 18 Pa.C.S.A. § 5122(a)(2).

_____

[6] As used in Weapon or Implement of Escape, "the word **'weapon'** means any implement readily capable of lethal use and shall include any firearm, ammunition, knife, dagger, razor, other cutting or stabbing implement or club, including any item which has been modified or adopted so that it can be used as a firearm, ammunition, knife, dagger, razor, other cutting or stabbing implement, or club." 18 Pa.C.S.A. § 5122(b)(2). As used in Prohibited Offensive Weapons, the term "offensive weapons" means any "bomb, grenade, machine gun, sawed-off shotgun with a barrel less than 18 inches, firearm specially made or specially adapted for concealment or silent discharge, any blackjack, sandbag, metal knuckles, any stun gun, stun baton, taser or other electronic or electric weapon or other implement for the infliction of serious bodily injury which serves no common lawful purpose." 18 Pa.C.S.A. § 908(c).

In the context of possessing drugs within the prison context, this Court has held that the element of being an inmate prevented merger of convictions for possession with intent to deliver ("PWID") and possession of drugs by an inmate. The crime of "possession by an inmate does not merge with PWID or controlled substance to prison, because possession by an inmate requires that the individual possessing the contraband is an inmate or prisoner, a requirement absent from both PWID and controlled substance to prison." **Commonwealth v. Sarvey**, 199 A.3d 436, 451 (Pa. Super. 2018). "This disparate element, absent from both of the other statutes, renders merger improper." **Id.** (citing **Commonwealth v. Baldwin**, 985 A.2d 830, 834 (Pa. 2009). The same is true when comparing the Prohibited Offensive Weapons and the Weapons or Implements of Escape statutes.

Thus, those two crimes have unique elements regarding the attendant circumstances of the actor's status at the time of the *actus reus*. As such, the crimes do not merge for sentencing purposes, and we dismiss Stevens' final appellate issue as warranting no relief.

Judgment of sentence affirmed.
Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/8/2024

- 11 -