# In the
# United States Court of Appeals
# for the Second Circuit

---

August Term 2025
Argued: October 17, 2025
Decided: March 19, 2026

---

No. 24-3312

---

JUSTIN RUSSELL,
*Plaintiff-Appellee,*

v.

JASON SCOTT,
*Defendant-Appellant,*

COMMISSIONER OF THE
VERMONT DEPARTMENT OF
CORRECTIONS,
*Respondent.*

---

Appeal from the United States District Court
for the District of Vermont
No. 20-cv-184, Geoffrey W. Crawford,
District Judge.

---

1

Before:  BIANCO, PÉREZ, and MERRIAM, *Circuit Judges*.

Justin Russell alleges that Jason Scott violated his constitutional rights by sexually abusing him while he was a pretrial detainee in the custody of the Vermont Department of Corrections ("DOC").  Russell claims that Scott, then a DOC corrections officer at Southern State Correctional Facility, grabbed, squeezed, and twisted his genitals under the false pretense of searching him for contraband.  On summary judgment, the District Court concluded that Scott was not entitled to qualified immunity as to Russell's claim that he committed sexual abuse in violation of the Fourteenth Amendment.  We agree.

Our jurisdiction to hear this interlocutory appeal is limited to determining whether—accepting Russell's version of events—Scott violated Russell's clearly established constitutional rights.  We conclude he did.  To reach that conclusion, we first clarify that the test for analyzing sexual abuse claims brought by pretrial detainees under the Fourteenth Amendment is not the same as the test for Eighth Amendment claims brought by convicted prisoners.  While the Eighth Amendment proscribes cruel and unusual punishment, the Fourteenth Amendment protects pretrial detainees—whom the state may not punish *at all*—from any objectively unreasonable treatment.  Therefore, an officer's intentional contact with a pretrial detainee's genitalia or intimate area, which does not serve a legitimate nonpunitive purpose or is excessive in relation to that legitimate nonpunitive purpose, violates the Fourteenth Amendment.  Scott's contact with Russell—on Russell's account of the facts—plainly violated that standard.  Moreover, even applying the higher standard for sexual abuse claims under the Eighth Amendment, Scott's alleged conduct would violate Russell's clearly established constitutional rights.  We therefore affirm the District Court's denial of qualified immunity, dismiss the remaining aspects of Scott's appeal for lack of jurisdiction, and remand for proceedings consistent with this opinion.

---

DAVID BOND, Law Office of David Bond, PLLC, Burlington, VT, *for Plaintiff-Appellee.*

> DAVID MCLEAN, Assistant Attorney General, Office of the Attorney General, Montpelier, VT, *for Defendant-Appellant*.

---

MYRNA PÉREZ, *Circuit Judge*:

Justin Russell alleges that Jason Scott violated his constitutional rights by sexually abusing him while he was a pretrial detainee in the custody of the Vermont Department of Corrections ("DOC"). Russell claims that Scott, then a DOC corrections officer at Southern State Correctional Facility ("SSCF"), grabbed, squeezed, and twisted his genitals under the false pretense of searching him for contraband. On summary judgment, the District Court concluded that Scott was not entitled to qualified immunity as to Russell's claim that he committed sexual abuse in violation of the Fourteenth Amendment. We agree.

Our jurisdiction to hear this interlocutory appeal is limited to determining whether—accepting Russell's version of events—Scott violated Russell's clearly established constitutional rights. We conclude he did. To reach that conclusion, we first clarify that the test for analyzing sexual abuse claims brought by pretrial detainees under the Fourteenth Amendment is not the same as the test for Eighth Amendment claims brought by convicted prisoners. While the Eighth

3

Amendment proscribes cruel and unusual punishment, the Fourteenth Amendment protects pretrial detainees—whom the state may not punish *at all*—from any objectively unreasonable treatment. Therefore, an officer's intentional contact with a pretrial detainee's genitalia or intimate area, which does not serve a legitimate nonpunitive purpose or is excessive in relation to that legitimate nonpunitive purpose, violates the Fourteenth Amendment.

Scott's contact with Russell—on Russell's account of the facts—plainly violated that standard. Moreover, even applying the higher standard for sexual abuse claims under the Eighth Amendment, Scott's alleged conduct would violate Russell's clearly established constitutional rights. We therefore affirm the District Court's denial of qualified immunity, dismiss the remaining aspects of Scott's appeal for lack of jurisdiction, and remand for proceedings consistent with this opinion.

# BACKGROUND

## I.   Scott's Alleged Assault of Russell

We begin with the undisputed facts.[1]  Justin Russell was a pretrial detainee at SSCF, which is operated by DOC.  Jason Scott was a corrections officer at SSCF during the time Russell was detained at the facility.  While at SSCF, Russell participated in the medication assisted treatment ("MAT") program.  As part of the program, Russell received regular doses of Suboxone.  Pursuant to facility policy, an SSCF nurse would administer Suboxone by placing crushed medication under Russell's tongue.  Russell would then sit under observation for ten minutes to allow the Suboxone to dissolve.  After the ten minutes was up, an SSCF officer would check his mouth to ensure the Suboxone had completely dissolved.

On one such occasion, in 2019, Scott was the corrections officer on duty while Russell was receiving his dose of Suboxone.  Upon entering the room to receive Suboxone, Scott directed Russell to remove his hat and Russell complied. An SSCF nurse then administered the medication, Scott visually confirmed that it

---

[1]      Portions of our summary of the relevant background are drawn from the Magistrate Judge's recitation of the contested and uncontested facts in his Report and Recommendation, *see Russell v. Scott*, 20-cv-184, 2024 WL 4988941, at *1–2 (D. Vt. Apr. 10, 2024), to which the parties do not object.

was under Russell's tongue, and Russell took a seat for ten minutes to wait for the medication to dissolve. After ten minutes passed, Russell stood up so that Scott could check his mouth to confirm the Suboxone dissolved, placing his hat—which had been in his lap while he sat—in the waistband of his pants.

At this point, the parties' versions of events sharply diverge. According to Scott, after he determined there was no Suboxone in Russell's mouth, he removed Russell's hat from his waistband and noticed that it contained what looked like crushed medication. Scott also testified that, at an earlier point while Russell was seated, he had "observed another inmate walk in front of him, stand for a . . . moment," and block Scott's view of both Russell and that detainee's face. App'x at 218. According to Scott, it "crossed [his] mind" that the "other inmate was spitting out his medication for Mr. Russell." *Id.* Scott testified that he did not recall making any contact with Russell's body and that he directed Russell to return to his unit. At that time, Scott claims, Russell became agitated and started angrily yelling at him. Scott walked to the door, again directed Russell to return to his unit, and then prepared a disciplinary report for misuse of medication.

Russell's account is starkly different.  As an initial matter, he denies having had any medication in his hat or on his person.  *See id.* at 278, 283, 288; Appellee's Br. at 12.  Rather, Russell testified that, after Scott checked his mouth and he began to walk away, Scott ordered him to stop.  Then, Scott grabbed Russell's hat, "reached into Russell's pants and grabbed, squeezed, and twisted Russell's penis." *Russell v. Scott*, 20-cv-184, 2024 WL 4825956, at *2 (D. Vt. Nov. 19, 2024); *see also* App'x at 94–95, 245, 247, 256, 258.  According to Russell, the force of Scott's contact with his genitals caused him to have "a rug burn and a red mark on his penis for about a week after the [incident], and then [he] experienced scabbing on his penis." *Russell*, 2024 WL 4825956, at *2.  Scott then followed Russell to the door, said to him "How'd you like that, mother fucker?" and slammed the door on Russell's arm.  *Id.* at *1; App'x at 346.  Two detainees who witnessed the interaction attested to seeing Scott "squeeze[] Mr. Russells [sic] Manhood."  App'x at 375; *see also* Bedard Aff. at 3, *Russell v. Scott*, 20-cv-184, Dkt. No. 49-8 (D. Vt. May 28, 2023).

Russell testified that he sought medical attention later that day, but the facility nurse never came to see him.  App'x at 95–96.  In the months that followed, Russell filed a series of administrative grievances reporting that Scott sexually

abused him, including two grievances filed the day after the incident. Russell was also interviewed by the SSCF Prison Rape Elimination Act investigator several days after the incident, who documented his account of Scott's conduct. The investigator ultimately deemed Russell's complaint "[u]nfounded" because "CO Scott was conducting a suitable pat search and [a disciplinary report] was written for diversion of MAT meds." *Id.* at 250. Russell appealed this determination and it was affirmed by another DOC officer. *Id.* at 178, 182–83. Russell was ultimately found not guilty of any disciplinary infraction because of chain of custody problems with the hat that allegedly contained diverted medication. *See id.* at 252–54.

## II.  <u>Procedural History</u>

After being released, Russell filed the instant lawsuit. He brought claims under the Eighth and Fourteenth Amendments for excessive force and sexual abuse. He also brought claims under Vermont law alleging intentional infliction of emotional distress, malicious prosecution, and assault. After discovery, Scott filed a motion for summary judgment on all of Russell's claims. The District Court granted Scott's motion as to Russell's Eighth Amendment claim and his

Fourteenth Amendment excessive force claim focused on Russell's allegation that Scott slammed the door on his arm. The Court also dismissed Russell's state-law claims.

However, the District Court denied Scott's motion as to Russell's Fourteenth Amendment sexual abuse claim, which focused on the allegation that Scott grabbed, squeezed, and twisted Russell's genitals. The District Court concluded that Scott had not established his entitlement to qualified immunity because a reasonable jury could conclude that his actions violated Russell's clearly established Fourteenth Amendment rights. In reaching that holding, the District Court concluded that although the evidence supporting Russell's version of events was largely his own testimony, that was enough for Russell to survive a motion for summary judgment. *See Russell*, 2024 WL 4825956, at *5–9. Additionally, the District Court allowed Russell to amend his complaint to bring a state-law battery claim arising out of his sexual assault allegations and denied summary judgment as to this claim as well.

Scott now brings an interlocutory appeal of the District Court's order. In the main, Scott argues that he is entitled to qualified immunity because, even

9

accepting Russell's version of events, he was justified in conducting a brief pat search to determine whether Russell was diverting medication. Scott also argues that, even if he is not entitled to qualified immunity, the action should be dismissed in its entirety because Russell failed to administratively exhaust his claims as required by the Prison Litigation Reform Act ("PLRA").

## STANDARD OF REVIEW

"We review a district court's denial of a motion for summary judgment sounding in qualified immunity *de novo*," *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012), and grant summary judgment "only when the movant demonstrates that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," *Washington v. Napolitano*, 29 F.4th 93, 103 (2d Cir. 2022).

## DISCUSSION

### I.    Appellate Jurisdiction

We first consider the scope of our jurisdiction to hear Scott's appeal. For the following reasons, we conclude that our jurisdiction is limited to determining

whether, accepting the entirety of Russell's testimony as true, Scott was nonetheless entitled to qualified immunity.

To be clear, this Court typically only has jurisdiction to "review[] 'final decisions' of United States District Courts." *Jok v. City of Burlington*, 96 F.4th 291, 293 (2d Cir. 2024) (quoting 28 U.S.C. § 1291). Accordingly, we "lack interlocutory jurisdiction to immediately review denials of summary judgment based on 'determinations of evidentiary sufficiency.'" *Id.* at 294–95 (quoting *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996)).

However, under the collateral order doctrine, interlocutory appeal is nevertheless allowed for "a narrow class of decisions that do not terminate the litigation, but must, in the interest of 'achieving a healthy legal system,' nonetheless be treated as 'final.'" *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867–68 (1994) (quoting *Cobbledick v. United States*, 309 U.S. 323, 326 (1940)). This narrow class of decisions can include "a denial of summary judgment based on qualified immunity" so long as appeal of the decision "may be resolved 'on stipulated facts, or on the facts that the plaintiff alleges are true, or on the facts

favorable to the plaintiff that the trial judge concluded the jury might find.'"

*Washington*, 29 F.4th at 103 (quoting *Salim v. Proulx*, 93 F.3d 86, 90 (2d Cir. 1996)).

Thus, while we may review "whether a given factual dispute is 'material' for summary judgment purposes," we lack appellate jurisdiction to "review whether a dispute of fact identified by the district court is 'genuine.'" *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (citation omitted); *see also Washington*, 29 F.4th at 103. In other words, "the denial of a claim of qualified immunity may appropriately be appealed immediately *only* to the extent that it turns on an issue of law." *Jok*, 96 F.4th at 295 (citation modified) (quoting *In re State Police Litig.*, 88 F.3d 111, 124 (2d Cir. 1996)).

We lack jurisdiction to consider the bulk of Scott's appeal. First, we lack appellate jurisdiction to determine, on an interlocutory basis, whether Russell adequately exhausted his administrative remedies under the PLRA. Administrative exhaustion under the PLRA is a "non-jurisdictional affirmative defense[]," *Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011), and while Scott may not have waived this defense, he has made no attempt to establish our jurisdiction to consider it on this interlocutory appeal. That alone is fatal to our jurisdiction as

to this issue. *See Jok*, 96 F.4th at 293 ("It is beyond dispute that a party seeking to invoke the jurisdiction of a federal courts bears the burden of establishing it."). To the extent Scott asks this Court to exercise pendent jurisdiction over the exhaustion issue, that too is unavailing. This Court can "exercise pendent jurisdiction over issues that are not ordinarily subject to interlocutory review whenever (1) they are 'inextricably intertwined' with the determination of qualified immunity or (2) their resolution is 'necessary to ensure meaningful review' of the district court's ruling on qualified immunity." *Savino v. City of New York*, 331 F.3d 63, 71–72 (2d Cir. 2003) (quoting *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 51 (1995)). Scott's PLRA exhaustion defense satisfies neither of these criteria.

Second, we lack jurisdiction to consider any challenge to the credibility of Russell's testimony. Scott insists that we "should discredit [Russell's] claim that [he] grabbed, squeezed, and twisted [Russell's] penis because it is not supported by any evidence other than [Russell's] own deposition testimony." Appellant's Br. at 22. The District Court considered that argument and was "unpersuaded that this is the exceptional case where it would be proper to discredit Plaintiff's evidence on summary judgment." *Russell*, 2024 WL 4825956, at *5. In other words,

13

to consider Scott's argument, we would have to review the District Court's "determination[] of evidentiary sufficiency." *Jok*, 96 F.4th at 295 (quoting *Behrens*, 516 U.S. at 313). That much we plainly cannot do.

Scott's citations to the contrary are inapposite, and his attempts to pick and choose the facts he is willing to accept for purposes of this appeal are unavailing. While there are rare cases in which it is appropriate for a court considering a summary judgment motion to discount a plaintiff's "contradictory and incomplete" testimony, *see, e.g.*, *Jeffreys v. City of New York.*, 426 F.3d 549, 554 (2d Cir. 2005), we have never suggested that we have appellate jurisdiction to make such determinations on an interlocutory basis. Indeed, we have repeatedly held the opposite. *See Jok*, 96 F.4th at 295; *Washington*, 29 F.4th at 103. And although Scott accepts some witness testimony for purposes of this appeal, that does not give us jurisdiction to resolve the factual issues he contests.[2]

---

[2] Nor can Scott circumvent the limits of our appellate jurisdiction by accepting only the "*creditable* evidence construed in Plaintiff's favor." Appellant's Br. at 16 (emphasis added). We cannot decide for ourselves what evidence is creditable, because that is just another way of saying we should determine which factual disputes are genuine, which we lack jurisdiction to do. *See Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). On interlocutory appeal, Scott must make do with "the facts favorable to the plaintiff that the trial judge concluded the jury might find." *Washington v. Napolitano*, 29 F.4th 93, 103 (2d Cir. 2022) (quoting *Salim v. Proulx*, 93 F.3d 86, 90 (2d Cir. 1996)).

Thus, Scott has properly invoked our jurisdiction only as to a narrow issue: whether, as a matter of law, he is entitled to qualified immunity from Russell's Fourteenth Amendment claim "on the facts favorable to [Russell] that the trial judge concluded the jury might find." *Washington*, 29 F.4th at 103 (quoting *Salim*, 93 F.3d at 90). We therefore limit our analysis to Scott's arguments that accept— as the District Court did—the entirety of Russell's account of the incident as reflected in his deposition testimony and interrogatory responses. *See Russell*, 2024 WL 4825956, at *5.

## II.  **Qualified Immunity**

Having defined the scope of our review, we now turn to the remaining issue in this appeal: whether, even on Russell's account of the incident, Scott was entitled to qualified immunity. On these facts, we easily conclude that he was not.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In conducting this analysis, we bear in mind

15

that "[q]ualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Vega v. Semple*, 963 F.3d 259, 272 (2d Cir. 2020) (alteration in original) (quoting *Pearson*, 555 U.S. at 231).

Officials are entitled to qualified immunity unless a plaintiff can show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Nat'l Rifle Ass'n of America v. Vullo*, 144 F.4th 376, 389 (2d Cir. 2025) (citation modified) (quoting *Tanvir v. Tanzin*, 120 F.4th 1049, 1060 (2d Cir. 2024)). We have discretion to consider either of the two qualified immunity prongs first. *See Tanvir*, 120 F.4th at 1060. In this case, we begin with the first prong: whether, on the facts as testified to by Russell, Scott violated Russell's rights under the Fourteenth Amendment.

### A. Fourteenth Amendment Violation

We first clarify the standard for evaluating claims of sexual abuse brought by pretrial detainees under the Fourteenth Amendment.

"Pretrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (citation modified) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 168 (2d Cir. 2007)). Accordingly, because Russell was a pretrial detainee at the time of the alleged abuse, his "claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight[h] Amendment." *Id.*

There is no doubt that Russell's "rights are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Id.* (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). The District Court analyzed Russell's sexual abuse claim using the standard for sexual abuse under the Eighth Amendment, reasoning that "if [Russell] has adduced sufficient evidence under that more demanding standard, then he likely also meets *Kingsley's* objective standard" for a Fourteenth Amendment claim. *See Russell*, 2024 WL 4825956, at *3–4. However, a pretrial detainee's rights against sexual abuse are *greater* than those afforded to convicted prisoners, as they are against any other form of

17

excessive force. Thus, determining whether Scott's treatment of Russell violated the Fourteenth Amendment requires its own analysis separate and apart from the Eighth Amendment. We explain below.

### 1. Objective Standard for Sexual Abuse Claims

Our Court has long recognized that the sexual abuse of incarcerated people "offends our most basic principles of just punishment" and violates the Constitution. *See Crawford v. Cuomo*, 796 F.3d 252, 260 (2d Cir. 2015). That rule reflects our society's "deep moral indignation . . . [at] the problem of sexual abuse in prison." *Id.* Thus, for nearly three decades, we have "left no doubt that sexual abuse by a corrections officer can give rise to an Eighth Amendment claim." *Id.* at 257 (citing *Boddie v. Schnieder*, 105 F.3d 857, 859 (2d Cir. 1997)).

Our caselaw understands sexual abuse committed by prison and jail officials to be a species of excessive force.[3] *See Crawford*, 796 F.3d at 256–58; *Harris v. Miller*, 818 F.3d 49, 63–65 (2d Cir. 2016). Indeed, our own test for evaluating prisoner sexual abuse claims under the Eighth Amendment—established in *Boddie*

---

[3]    We are not alone in this approach. *See, e.g., Ricks v. Shover*, 891 F.3d 468, 473–75 (3d Cir. 2018); *Hale v. Boyle County*, 18 F.4th 845, 852–53 (6th Cir. 2021); *Bearchild v. Cobban*, 947 F.3d 1130, 1140 (9th Cir. 2020); *Brown v. Flowers*, 974 F.3d 1178, 1182–83 (10th Cir. 2020).

*v. Schnieder* and refined in *Crawford v. Cuomo*—was constructed atop the seminal excessive force framework articulated by the Supreme Court in *Hudson v. McMillian*, 503 U.S. 1 (1992).

The purpose of this Circuit's *Crawford* test, like the framework in *Hudson* and other Eighth Amendment excessive force cases, is to determine whether an officer's contact with a prisoner amounted to cruel and unusual punishment—that is, whether the force applied was "repugnant to the conscience of mankind." *Crawford*, 796 F.3d at 256 (quoting *Hudson*, 503 U.S. at 9–10). To that end, we held that "the principal inquiry is whether the contact [at issue] is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate." *Id.* at 257–58.

But claims of excessive force under the Fourteenth Amendment are subject to a very different analysis. Because pretrial detainees have not been convicted of a crime and thus may not be punished at all, "it is plain that punishment has no place in defining the *mens rea* element of a pretrial detainee's claim under the Due Process Clause." *See Darnell*, 849 F.3d at 29, 35. Under the Fourteenth

19

Amendment, the inquiry is not whether a detainee has experienced treatment that is cruel and unusual; rather, "the Due Process Clause protects a pretrial detainee from the use of excessive force that *amounts to punishment*," *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (emphasis added).

Force amounting to punishment includes "actions [that] are not 'rationally related to a legitimate nonpunitive governmental purpose' or . . . actions [that] 'appear excessive in relation to that purpose.'"[4] *Kingsley v. Hendrickson*, 576 U.S. 389, 397–98 (2015) (quoting *Bell v. Wolfish*, 441 U.S. 520, 561 (1979)). Indeed, we have explained that "the central inquiry" under the Fourteenth Amendment "has always been whether the government action was rationally related to a legitimate government objective," and that "this standard is the essence of all Fourteenth Amendment claims." *Edrei v. Maguire*, 892 F.3d 525, 535–36 (2d Cir. 2018). Thus,

---

[4] Force amounting to punishment also "can consist of actions taken with an 'expressed intent to punish.'" *Kingsley v. Hendrickson*, 576 U.S. 389, 397–98 (2015) (quoting *Bell v. Wolfish*, 441 U.S. 520, 538 (1979)). Thus, officer contact with a pretrial detainee violates the Fourteenth Amendment if it is done for the purpose of punishment, even if it was otherwise reasonable under an objective standard. *See Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 55 (2d Cir. 2017) ("[I]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." (quoting *Bell*, 441 U.S. at 539)).

to prove a Fourteenth Amendment excessive force violation, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable."[5] *Kingsley*, 576 U.S. at 396–97.

And because sexual abuse claims are a species of excessive force, *Crawford*'s Eighth Amendment test does not apply to sexual abuse claims brought by pretrial detainees under the Fourteenth Amendment.[6] An officer's subjective intent— relevant to whether he is inflicting cruel and unusual punishment—does not determine whether his actions amounted to excessive force in violation of the

---

[5]    The Supreme Court's reference to purposeful or knowing use of force refers to "the defendant's state of mind with respect to his physical acts—*i.e.*, his state of mind with respect to the bringing about of certain physical consequences in the world," and not "the defendant's state of mind with respect to whether his use of force was 'excessive.'" *Kingsley*, 576 U.S. at 395–96.

[6]    As the District Court noted, prior to *Kingsley*, we held that the test for deliberate indifference claims brought by pretrial detainees under the Due Process Clause (of the Fourteenth Amendment for those in state custody and the Fifth Amendment for those in federal custody) was the same as the test for deliberate indifference claims under the Eighth Amendment. *See Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009). However, we have since recognized that *Kingsley* abrogated our holding in *Caiozzo* as to deliberate indifference claims. *See Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). Still, the District Court here concluded that it remains unclear what standard applies to sexual abuse claims, because *Kingsley* concerned excessive force and *Darnell* concerned deliberate indifference. *See Russell*, 2024 WL 4825956, at *3. While we recognize that we could always be clearer, we respectfully disagree that there is any uncertainty. Our Court has never treated sexual abuse claims brought by convicted prisoners or pretrial detainees as though they are their own unique species of claim—to the contrary, for decades, we have always analyzed such claims using the same framework as any excessive force claim. Accordingly, in view of the Supreme Court's holding in *Kingsley*, coupled with our subsequent decisions in *Darnell* and in *Edrei v. Maguire*, 892 F.3d 525 (2d Cir. 2018), we discern no ambiguity in our law as to what standard governs pretrial detainees' claims of sexual abuse under the Fourteenth Amendment.

Fourteenth Amendment.[7]  *See Kingsley*, 576 U.S. at 397–98.  Rather, the "ultimate Fourteenth Amendment inquiry [is] whether the governmental action was rationally related to a legitimate governmental objective."  *Edrei*, 892 F.3d at 536. Thus, an officer violates the Fourteenth Amendment when his contact with a pretrial detainee was objectively unreasonable.  Whether such contact amounted to sexual abuse, inflicted physical harm, or both does not change the essential Fourteenth Amendment inquiry: was the officer's contact with the pretrial detainee "rationally related to a legitimate nonpunitive governmental purpose," and if so, did it nonetheless "appear excessive in relation to that purpose." *Kingsley*, 576 U.S. at 397–98 (quoting *Bell*, 441 U.S. at 561).

The key point is that "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one."  *Id.* at 397.  By contrast, under *Crawford*, "[a] corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose *and is undertaken with the*

---

[7]      As explained, *supra* note 4, an officer's subjective intent *can* render his treatment of a pretrial detainee unconstitutional under the Fourteenth Amendment if the officer inflicted the treatment with the intent to punish the detainee.  *See Kingsley*, 576 U.S. at 397–98; *Bell*, 441 U.S. at 538; *Almighty*, 876 F.3d at 55. Thus, we do not suggest that an officer's subjective intent can never be relevant to an excessive force claim. We simply observe that no subjective analysis is *necessary* to determine that the force applied to a pretrial detainee was unconstitutional.

22

*intent to gratify the officer's sexual desire or to humiliate the inmate*, violates the Eighth

Amendment." *Crawford*, 796 F.3d at 254 (emphasis added). Pretrial detainees do

not need to establish that they were subjected to contact "undertaken to arouse or

gratify the officer or humiliate" them in order to prove that they were subjected to

unconstitutional force. *Id.* at 257–58. They do not even need to show that the

officer was subjectively aware that the contact he or she was making was excessive

or unnecessary.[8] The standard for sexual abuse under the Fourteenth Amendment

is objective, through and through.

The Fourteenth Amendment guarantees that any contact with a pretrial

detainee's genitals, or other intimate body part, must be justified by a legitimate

nonpunitive interest and cannot be excessive in relation to that interest. Of course,

the institutional demands of prison and jail administration may sometimes require

---

[8]      We stress, as the Supreme Court did in *Kingsley*, that "the use of an objective standard adequately protects an officer who acts in good faith." 576 U.S. at 399. For one thing, "court[s] must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer." *Id.* Moreover, liability is limited "to situations in which the use of force was the result of an intentional and knowing act," and officers still "enjoy[] qualified immunity and [are] not liable for excessive force unless [they] ha[ve] violated a 'clearly established' right, such that 'it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* at 400 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). It is therefore "unlikely (though theoretically possible) that a plaintiff could overcome these hurdles where an officer acted in good faith." *Id.*

officers to "invade the personal privacy of inmates."[9]  *Bell*, 441 U.S. at 560.

Incarceration degrades, invariably.  Even so, institutional priorities cannot erode

constitutional protections.  Every "inmate has a constitutional right to be secure in

her bodily integrity."  *Brown v. Flowers*, 974 F.3d 1178, 1183 (10th Cir. 2020) (citation

modified) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998)).  And

every pretrial detainee has a constitutional right to be free from punishment.

Those basic principles amount to a simple and well-established proposition:

officer contact with a pretrial detainee must always be objectively reasonable.[10]

---

[9]      For instance, searches undertaken to detect contraband, even if they are very invasive, will easily satisfy this standard so long as they do not exceed what a reasonable officer would think was necessary to achieve that purpose under the relevant circumstances.

[10]      By way of guidance, the Supreme Court has directed courts analyzing Fourteenth Amendment excessive force claims to consider, inter alia: (1) "the relationship between the need for the use of force and the amount of force used"; (2) "the extent of the plaintiff's injury"; (3) "any effort made by the officer to temper or to limit the amount of force"; (4) "the severity of the security problem at issue"; (5) "the threat reasonably perceived by the officer"; (6) "and whether the plaintiff was actively resisting."  *Kingsley*, 576 U.S. at 397; *see also Edrei*, 892 F.3d at 534 (reciting these factors).  Ultimately, because "objective reasonableness turns on the 'facts and circumstances of each particular case,'" courts "cannot apply this standard mechanically."  *See Kingsley*, 576 U.S. at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  It is therefore up to courts to determine, in each particular case, whether officer conduct was justified by, and proportional to, a legitimate nonpunitive goal.

2. Application to Scott's Conduct

Applied here, on the facts as alleged by Russell before us on this interlocutory appeal, Scott's treatment of Russell violated the Fourteenth Amendment.

To begin, we agree with Scott that detecting contraband is a legitimate nonpunitive purpose that can justify an invasive search. *See Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 330–32 (2012); *Hayes v. Dahlke*, 976 F.3d 259, 275 (2d Cir. 2020). And as the District Court explained, the parties do not actually dispute that, while Scott was monitoring Russell, he "observed another inmate walk in front of [Russell], stand for a . . . moment, and [Scott] could not see . . . Russell or the other inmate's face." *Russell*, 2024 WL 4825956, at *5 (quoting App'x at 218). We therefore agree that it was reasonable, under these circumstances, for Scott to suspect that the other inmate may have attempted to pass medication he had just received to Russell. That suspicion was enough to justify a pat search of Russell. *See id*. at *5–6.

However, Scott's reasonable suspicion that Russell may have diverted medication from another inmate did not render the search, as allegedly conducted,

objectively reasonable. First, Russell's testimony that Scott said, "How'd you like that, Mother Fucker?" to him after grabbing his genitals could suggest that the search was undertaken with a punitive purpose. *See* App'x at 346. Such "an expressed intent to punish on the part of [the] detention facility official[]" suffices to establish a Due Process violation regardless of exactly how Scott conducted the search. *See Bell*, 441 U.S. at 538. A reasonable jury could infer an intent to punish from that statement coupled with the manner in which Russell claims Scott conducted the search.

Second, accepting Russell's account, the manner in which Scott conducted the search was grossly excessive in relation to the interest that justified it. No search for contraband could require grabbing, squeezing, and twisting Russell's penis. Nor could any reasonable search ever require touching Russell's genitals in such a way that would leave him with "rugburn" and "scabbing."

Moreover, Scott conducted the search with his bare hands in full view of other inmates, making no effort to limit his intrusion on Russell's privacy and bodily integrity. Scott conducted the search in this manner even though Russell was not resisting or attempting to evade Scott at all. As the District Court

observed, this appears to violate DOC's own policy concerning detainee searches, which "states that '[a]ll searches shall be carried out in a professional manner, where the dignity of the person subjected to the search is maintained' and that '[s]earches of all persons shall be conducted in a manner that protects their privacy, confidentiality, and personal dignity to the extent consistent with this policy.'" *Russell*, 2024 WL 4825956, at *7 (alterations in original) (quoting Interim Revision Memorandum from Andrew A. Pallito, Comm'r, Vt. Dep't of Corr., to All Staff, Vt. Dep't of Corr. (Sep. 13, 2010).[11]

Of course, as Scott points out, constitutional standards are not set by DOC guidance. Still, the Supreme Court has long instructed that "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell*, 441 U.S. at 547. Here, the considered judgment of DOC as to the manner in which invasive searches should be conducted—as reflected in its guidance documents—

---

[11]     *See* https://perma.cc/FP94-B6Q8.

serves as relevant evidence that the manner in which Scott conducted the search was unreasonable and excessive.

In all, even if some search for contraband was justified, the manner in which Scott allegedly conducted the search was objectively unreasonable.[12] Again, we stress that this conclusion is based "on the facts favorable to [Russell] that the trial judge concluded the jury might find." *Washington*, 29 F.4th at 103 (quoting *Salim*, 93 F.3d at 90). On remand, the factfinder may ultimately conclude that Scott conducted a search that was objectively reasonable, or that he did not conduct any search at all. But on the facts we must accept for purposes of interlocutory review, Scott's conduct violated Russell's Due Process rights under the Fourteenth Amendment.

## B. Clearly Established

Finally, we turn to the second prong of the qualified immunity analysis: whether it was clearly established at the time of the incident that Scott's conduct

---

[12] We further note that, for substantially the reasons described by the District Court, Scott's alleged conduct would have violated the *Crawford* standard for cruel and unusual punishment as well.

violated the Fourteenth Amendment. We conclude that it was, and therefore that Scott is not entitled to qualified immunity on the current record.

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Galloway v. County of Nassau*, 141 F.4th 417, 423 (2d Cir. 2025) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Put simply, "a right alleged to have been violated is clearly established only if it is sufficiently clear to every reasonable official that the challenged conduct, in the specific context of the case, violates that right." *Vullo*, 144 F.4th at 389–90 (citation modified) (quoting *Radwan v. Manuel*, 55 F.4th 101, 114 (2d Cir. 2022)).

We consider three factors when determining whether a right has been clearly established: "whether (1) it was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood that his conduct was unlawful." *Id.* at 390 (quoting *Radwan*, 55 F.4th at 114). Applied here, the

29

"violative nature" of Scott's conduct would have been clear to any reasonable officer in his position at the time of the incident. *See Mullenix*, 577 U.S. at 12.

First, it was clearly established by the time of the alleged incident that the Fourteenth Amendment forbids objectively unreasonable treatment of pretrial detainees. Scott insists that the objective standard for evaluating Fourteenth Amendment sexual abuse claims brought by pretrial detainees was not clearly established in 2019 because we had not yet explicitly said that the *Crawford* test does not apply to pretrial detainees. Not so.

It has long been black-letter constitutional law that pretrial detainees cannot be subject to treatment that "amounts to punishment." *Graham*, 490 U.S. at 395 n.10. Drawing on other decades-old precedent, the Supreme Court explained in *Kingsley* that this includes treatment that is "not 'rationally related to a legitimate nonpunitive governmental purpose' or that . . . 'appear[s] excessive in relation to that purpose.'" 576 U.S. at 397–98 (quoting *Bell*, 441 U.S. at 561). Applying *Kingsley*, we then explained that "punishment has no place in defining the *mens rea* element of a pretrial detainee's claim under the Due Process Clause." *Darnell*, 849 F.3d at 35. Indeed, we held unambiguously the "ultimate Fourteenth

Amendment inquiry [is] whether the governmental action was rationally related to a legitimate governmental objective." *Edrei*, 892 F.3d at 536. All this caselaw predates the incident at the heart of this case.

Moreover, *Crawford* itself could not apply to sexual abuse claims brought by pretrial detainees. As explained in detail above, *Crawford*, like *Boddie* before it, analyzed claims of sexual abuse brought by convicted prisoners as a type of excessive force claim under the Eighth Amendment. When *Crawford* was decided, the Supreme Court had already ruled that Fourteenth Amendment excessive force claims are subject to a substantively distinct objective reasonableness standard.[13] *See Kingsley*, 576 U.S. at 397–98. Thus, the only way *Crawford* could be read to bear on the Fourteenth Amendment rights of pretrial detainees is if one assumes our Court flagrantly (and wordlessly) ignored a clear holding of the Supreme Court issued just two months earlier. Moreover, even if there were any lingering doubt after *Crawford*, our decisions in *Darnell* and *Edrei* clarified that objective

---

[13]  Indeed, *Crawford* relied heavily on two cases—*Hudson v. McMillan* and *Whitley v. Albers*—that the Supreme Court explained in *Kingsley* were irrelevant to defining the mens rea required by the Fourteenth Amendment. *See Kingsley*, 576 U.S. at 400–01.

reasonableness "is the essence of all Fourteenth Amendment claims." *Edrei*, 892 F.3d at 535.

We turn to the specific conduct at issue here. For substantially the reasons described in the previous section, it was clearly established that the manner in which Russell claims Scott "searched" him was objectively unreasonable. The objective reasonableness standard for treatment of pretrial detainees was articulated with sufficient clarity and specificity to make any reasonable officer aware that any contact with a pretrial detainee's genitals had to be justified by a legitimate nonpunitive interest and that such contact must be proportional to that interest. While Scott cites cases in which invasive searches were deemed lawful, none of these cases suggest that an officer would ever be justified in grabbing, squeezing, and twisting a pretrial detainee's genitals. Nor has Scott pointed to any caselaw suggesting that a lawful search for contraband may be so forceful that it results in rugburn and scabbing to a detainee's genitals. And Scott's alleged comments to Russell after he grabbed his genitals suggest that the search was

conducted to punish, humiliate, or degrade Russell—something any reasonable officer would have known was unlawful.[14]

In sum, on Russell's account, Scott's conduct violated his clearly established Fourteenth Amendment rights. Therefore, as the District Court concluded, Scott was not entitled to qualified immunity as to Russell's Fourteenth Amendment and state-law battery claims.

## CONCLUSION

For the foregoing reasons, we **DISMISS** for lack of jurisdiction Scott's appeal insofar as it (1) raises arguments concerning PLRA exhaustion, and (2) contests the District Court's factual determinations. We **AFFIRM** the District Court's order to the extent that it denied Scott's motion for summary judgment based on qualified immunity. We **REMAND** this matter to the District Court for further proceedings consistent with this opinion.

---

[14]    We note that, in reaching this conclusion, we do not disagree with the District Court's conclusion that Scott's alleged conduct violated Russell's clearly established rights even applying the Eighth Amendment standard as articulated by *Crawford*. As discussed above, *see supra* note 12, a reasonable jury could conclude that Scott's contact with Russell's genitals was "undertaken to arouse or gratify the officer or humiliate the inmate," *Crawford*, 796 F.3d at 257–58. But because it is the objective reasonableness standard for Fourteenth Amendment claims that controls here—and because that standard was clearly established in our Circuit by 2019—we do not, as the District Court did, rest our decision on that conclusion.